McNelly, Admx., Appellant, *v.* The Dayton Power & Light Company, Appellee.*

(No. 751—Decided October 24, 1957.)

*Messrs. Pickrel, Schaeffer & Ebeling, Mr. William H. Selva* and *Messrs. Spidel, Staley & Hole,* for appellant.

*Messrs. Landis, Ferguson, Bieser & Greer* and *Messrs. Marchal & Marchal,* for appellee.

*Motion to certify the record overruled, January 15, 1958.

CRAWFORD, J. This is an appeal on questions of law from a judgment for defendant, appellee herein, in an action for wrongful death. At the end of plaintiff-appellant's evidence the trial court sustained a motion for a directed verdict for defendant. This ruling is the subject of plaintiff's single assignment of error.

The evidence shows, among other things, the following facts: Plaintiff's decedent, Dennis M. McNelly, was, on September 17, 1953, the day of his death, in the employ of The Wagner-Smith Company which was constructing an electric line pursuant to a contract with the defendant, The Dayton Power & Light Company; on that day the decedent was, by means of climbers, standing upon and in contact with a pole and engaged in operating by hand a hydraulic press or hypress supplied by defendant; the press was resting upon a "hot board" which had been temporarily attached to and extended horizontally from the pole; the press was apparently insulated from the board by a rubber blanket; the decedent was insulated from the press, which was of metal, by rubber gloves; the press was connected by several feet of metal hose to a head or set of metal jaws; this head was being applied by another lineman, Clyde Carey Long, to aluminum sleeves, in order to join together the ends of jumpers connecting line wires which were energized in one direction; the metal hose and press contained oil by means of which sufficient hydraulic pressure could be conveyed by manual operation of the press to the head so as to crimp the sleeves and thus hold together the ends of the jumpers; the metal hose was covered with rubber which, according to a statement on the container in which it was stored and carried, was sufficient to insulate up to 250 volts; the energized lines were capable of carrying 12,000 volts and were actually carrying approximately 7,000 volts.

During this operation a break occurred in the metal hose near the press. The oil spurted out, easing the pressure, and the press thereupon collapsed. The decedent immediately fell upon the press and was electrocuted, death occurring a few hours later.

In order to pass upon the propriety of the trial court's action in directing a verdict for the defendant, we must analyze

the evidence pertaining to the six allegations of negligence set forth in the amended petition.

It is charged that defendant was negligent:

"1. In furnishing a splicer to be used by the employees of Wagner-Smith Company which was constructed to withstand 250 volts of electricity when defendant knew that said work required the use of the hydraulic splicer to connect lines carrying approximately 12,000 volts of electricity."

There is considerable controversy as to whether, under the contract, defendant, therein designated as the "company," was obliged to furnish a press or hypress for the use of the employees of The Wagner-Smith Company, therein designated as "contractor." The contract required the contractor "to furnish all necessary labor, tools and equipment required" "for the erection, maintenance or removal of electric pole lines and associated facilities it is requested to undertake."

It also provided that the contractor "will use on the job only such materials and equipment as are supplied or made available to the contractor by the company for such purpose and are approved as to fitness and design therefor by the company."

It is claimed on the one hand that the hypress was "equipment" to be supplied by the company, and on the other that it was a "tool" to be supplied by the contractor. On the basis of context, there would appear to be considerable merit in the contention that the term, "materials and equipment," supplied and approved by the company refers only to such items as are intended for installation, and that the term, "labor, tools and equipment," refers to the agencies and devices, including the hypress, which were to be employed in making the installation, and that the company was lending the hypress as an accommodation.

But whatever the status of the hypress and whatever the resultant degree of care imposed upon the company, evidence is lacking as to any negligence on its part in supplying the press which would justify submitting the issue to the jury.

The break in the hose and consequent release of the hydraulic pressure permitted the press to collapse, whereupon decedent fell upon and thus made contact between it and the grounded pole upon which he was standing.

But there is a complete lack of evidence as to what caused the hose to break. The hypress had apparently been purchased in 1950 and repaired or reconditioned in 1953. It was described as looking like new, and it had been working satisfactorily for at least one or two days before the accident. While there is no evidence as to whether it had been tested or inspected by the company, there was no indication that any such test or inspection would have revealed a defect, or that it contained any defect while in the company's possession. And prior to the accident it had been handled by various employees of both the company and the contractor.

The fact that the rubber covering the metal hose was built to insulate only 250 volts has not been shown to be of any significance in this case, because there is no evidence that the break was caused by any ground or short circuit, either at the point of the break or elsewhere, and there is no claim or evidence that decedent's electrocution involved any contact with the hose.

This analysis of the facts also disposes of the second element of negligence charged against the defendant:

"2. In providing equipment which defendant should have known was defective and unsuitable for the purposes intended."

No defect in the hypress or splicer having been shown, there could be no duty to notify anyone of such a condition. Nor has any duty been shown to issue any warning or special instructions as to a device which was apparently of a type in frequent use and which had actually been previously used by the decedent and his fellow workman, Clyde Carey Long, both experienced linemen. The third charge of negligence is therefore unsupported by proof:

"3. In failing to warn plaintiff's decedent that the hydraulic splicer supplied by defendant, and then being used by plaintiff's decedent, was not fully insulated."

The fourth element of negligence charged is:

"4. In supplying equipment which was insufficient to withstand the pressure required to splice the electric wires in that the hydraulic press collapsed while it was being used to splice electric wires."

There is no evidence that either mechanical weakness or excessive pressure caused the break. The evidence indicates that this hypress was built to deliver 100 tons of pressure, which

was apparently adequate; and it, as well as a similar press, had been successfully used previously.

The last two charges of negligence are closely related:

"5. In failing to cut off the current and stop the flow of electricity through the body of the plaintiff's decedent during the time that defendant's inspector watched the electric current consume the plaintiff's decedent.

"6. In failing to have the electric line equipped with safety devices which would terminate the electric current upon the occurrence of a short circuit."

Without reviewing in detail the automatic and manual equipment employed in this case to break and reclose the circuit in case of a "fault" or "short," suffice it to say that the testimony of Harold E. Deardorff, vice-president of the company, called by plaintiff for cross-examination, was to the effect that the devices and procedures which were employed here constituted "the type of protective control and re-closing that is universally used all over the country on distribution service of this type." This testimony is uncontradicted.

It is contended that the company should have de-energized or cut off the current from the lines while the work was being done, but there is no evidence that they were requested so to do or that they were advised of the time when this part of the work was to be performed.

Therefore, the evidence did not justify the submission to the jury of any of the six issues of negligence.

It is vigorously argued that Joseph L. Zell, an engineer whom Deardorff described as "co-ordinator and inspector" for the company, was actually in charge of the detailed operations of the decedent and of the other employees of The Wagner-Smith Company, so as to remove The Wagner-Smith Company from the category of an independent contractor.

The evidence shows clearly that decedent and Long, together with the other employees of The Wagner-Smith Company, were working under the supervision of Charles Hines, foreman for the contractor.

The contract provided that such foreman should "at all times, receive and follow the instructions of the authorized representative of the [Dayton Power & Light] company [identified

as Joseph L. Zell], and that the contractor will conform at all times to the instructions of the company's authorized representative as to the order in which and the time at which every part of each job shall be done." It is clear from the terms of the contract that it was a continuing one, not limited to a specific job. Hence, pursuant to such contract it was necessary that the company indicate what it wanted done and in what order. But this created no relationship of master and servant between the company and the contractor's employees, and the "contractor" continued to be an independent contractor in the fullest sense of the word with its own superintendent or foreman directing its employees in the details of the work. 21 Ohio Jurisprudence, 627, Independent Contractors, Section 5.

Plaintiff's witness, Long, was inquired of about these matters. He was able to recall only one instance, on a prior job, where the company's representative, Zell, had given any instructions, and they pertained "to the location of certain air brakes"; but it appears that he merely specified the elevation at which the brakes should be placed, not the manner in which the contractor, its foreman or its employees should proceed in placing them there.

The plaintiff has failed to produce proof upon any determinative issue upon which reasonable jurors could reasonably find in her favor.

The judgment is, accordingly, affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and WISEMAN, J., concur.